UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| DEBBIE CAMPBELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:05-CV-0257-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff Debbie Campbell seeks judicial review of a decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

**I.    Statement of the Case**

Campbell alleges that she suffers from fibromyalgia, sleep disorder, chronic fatigue, pain, migraine headaches, degenerative disk disease, seizures, and other medical conditions that prevent her from working. (Tr. 104.) An Administrative Law Judge (ALJ) applied the five-step sequential inquiry required under the regulations, 20 C.F.R. § 404.1520, and

determined that Campbell suffered from severe impairments but that none of her impairments alone or in combination met the criteria of an impairment listed in the regulations. (Tr. 14.) Continuing under the sequential inquiry he determined that Campbell retained functional abilities that would enable her to perform the exertional and nonexertional requirements of sedentary work. However, he also determined that she suffered from a preoccupation with pain that caused a less than moderate concentration deficit which would limit her to work involving only unskilled tasks. (Tr. 21.) Based on these determinations the ALJ concluded that Campbell could not perform her past work, but that based on Rules 201.28 and 201.21 in the Medical-Vocational Guidelines she could perform work that existed in substantial numbers in the national economy. (Tr. 22.) The Appeals Council denied Campbell's request for review and the ALJ's decision became the Commissioner's final decision. (Tr. 4-7.)

Campbell raises the following issues for review: (1) whether the ALJ applied the proper legal standards in determining that her treating physician's records were not entitled to controlling weight; (2) whether the ALJ applied the proper legal standards in assessing the credibility of her testimony regarding her pain and functional limitations and whether his determination that her testimony was not credible is supported by substantial evidence; and (3) whether the ALJ satisfied his duty to fully and fairly develop the record.

**II.**     **The ALJ's assessment of Campbell's treating physician's opinions**

Jeff W. Paxton, M.D., Campbell's treating physician, completed a questionnaire on which he indicated his opinion as to Campbell's ability to perform specific work-related activities. (Tr. 201-03.) In short, Dr. Paxton's opinions indicate his belief that Campbell was

severely limited by her impairments and incapable of performing even sedentary work. The ALJ determined that Dr. Paxton's opinions were not entitled to controlling weight because the functional limitations included in the questionnaire were "based almost entirely on [Campbell's] subjective complaints with virtually no objective clinical support." (Tr. 18.)

Campbell points out that Dr. Paxton is a family physician employed with the Family Practice Center at Texas Tech University and contends that the ALJ should have accorded controlling weight to his opinions. She contends that he failed to apply the proper legal standards because he focused on only one of the regulatory factors – whether the opinions were supported by other evidence. She also contends that he failed to seek clarification or additional evidence from Dr. Paxton.

Opinions offered by treating physicians are not conclusive; the Fifth Circuit Court of Appeals has held that an ALJ may give little or no weight to any physician opinion that is not supported by the medical evidence or is inconsistent with other substantial evidence in the record. *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). "[A] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (internal quotations and citations omitted). Thus, in the Fifth Circuit an ALJ may reject an opinion of a claimant's treating physician if the opinion is either (1) not supported by medical evidence or (2) inconsistent with other substantial evidence in

3

the record. *Newton*, 209 F.3d at 455; *Spellman*, 1 F.3d at 364.

In this case the ALJ rejected Dr. Paxton's opinions because they were not supported by the medical evidence, and his decision in this regard is supported by substantial evidence. Dr. Paxton indicated in part that Campbell was capable of lifting and/or carrying only eight pounds as a result of lower back pain and numbness in her hands; standing and/or walking for less than an hour as a result of lower back pain and numbness in her legs; and sitting for periods of fifteen to twenty minutes for a total of two hours in a workday; and that environmental factors such as heights, fumes, noise, humidity, dust, and temperature extremes would exacerbate her symptoms and trigger migraines and seizures. *Id*.

The ALJ explained that Dr. Paxton's opinions did not accurately reflect limitations that resulted from medically determinable impairments and pointed out that there was no evidence in the medical records that would establish that Campbell was undergoing treatment for a seizure disorder, that she experienced numbness in any extremity, or that she had migraine versus other types of headaches. *Id*. The ALJ was correct. Although Campbell reported to a number of physicians that she had a history of migraines and seizures, there is no objective medical evidence that she suffered from such and there is no diagnostic evidence that would show that she suffered from numbness in any extremity. (Tr. 155, 195, 191, 199, 243, 249-50.) Because Dr. Paxton's opinions were not supported by the evidence there was good cause for the ALJ to reject the opinions. *Brown v. Apfel,* 192 F.3d 492, 500 (5th Cir. 1999).

Further, contrary to Campbell's contentions, the ALJ considered the factors set forth

under the regulations before rejecting Dr. Paxton's opinions. The factors an ALJ must consider are (1) the length of the treating relationship and the frequency of examination; (2) the nature and extent of the treatment relationship – the examinations, treatment, and testing provided and ordered by the physician; (3) whether the physician presents evidence to support and explain the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether the physician is a specialist in the area of medicine for which he offers his opinion; and (6) other factors that would tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2). The ALJ's narrative of Campbell's medical history makes clear that he considered the first two factors; he considered the length of the treatment relationship and the frequency with which Dr. Paxton examined and treated Campbell for her illnesses. (Tr. 15-19.) The ALJ also considered, under factor five, that Dr. Paxton was not a specialist in the areas of medicine for which he offered opinions; he noted that Dr. Paxton was a primary care physician. (Tr. 18.) Lastly, he considered factors three, four, and six and found that Dr. Paxton's opinions were based on Campbell's subjective allegations and that the opinions lacked evidentiary support. The ALJ, therefore, considered the regulatory factors before rejecting Dr. Paxton's opinions. Because the ALJ followed the appropriate legal procedure and because there was good cause for rejecting Dr. Paxton's opinions, there was no error and Campbell's arguments to the contrary must be rejected.

Likewise, the court must reject Campbell's argument that the ALJ should have obtained additional evidence or clarification from Dr. Paxton. Even if the court were to assume that the ALJ was obligated to re-contact Dr. Paxton for additional information or

clarification, reversal would be appropriate only if Campbell had shown that she was prejudiced by ALJ's failure to meet that obligation. *Newton*, 209 F.3d at 458 (citing *Ripley v. Chater*, 67 F.3d at 552, 557 (5th Cir. 1995)). "'Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.'" *Newton*, 209 F.3d at 458 (quoting *Ripley*, 67 F.3d at 557 n.22). Campbell has not claimed, much less shown, that additional evidence could have been produced if requested and that such evidence would have led to a different decision.

### III. The ALJ's assessment of Campbell's testimony regarding her pain and limitations

Campbell contends that her testimony regarding the pain and fatigue she experienced was not in conflict with the medical records and argues that the ALJ did not utilize the proper legal standards when he evaluated testimony regarding her pain and functional limitations.

The medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level of pain and symptoms alleged by the claimant. *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); 20 C.F.R. §§ 404.1529(a), 416.929(a). The ALJ in this case found that Campbell had impairments that could be expected to produce some of the symptoms she alleged but determined that the degree of impairment she alleged was not supported by objective medical evidence. (Tr. 20.) Once an ALJ makes such a determination, he is required to evaluate the intensity and persistence of the claimant's pain and other symptoms to determine how his symptoms would limit his

ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The ALJ is required to consider a claimant's testimony regarding subjective evidence of pain and failure to do so is reversible error. *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1981). Often referred to the credibility determination, this requires the ALJ to weigh the objective medical evidence and assign articulated reasons for discrediting the claimant's subjective complaints of pain. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988) (citation omitted). In making the credibility determination the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage and side effects of any medication the claimant takes to alleviate his pain or other symptoms; (5) treatment other than medication the claimant may receive or has received for relief of his pain or other symptoms; (6) any measure the claimant uses or has used to relieve his pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions caused by pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ must "indicate the credibility choices made and the basis for those choices. *Scharlow*, 655 F.2d at 648-49; *see also* S.S.R. 96-7P, 1996 WL 374186 at * (The ALJ's decision must include findings that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

In this case the ALJ provided a detailed discussion and analysis of Campbell's testimony as well as a discussion of his credibility choices and the reasons for those choices.

7

The ALJ addressed each of the factors listed in 20 C.F.R. §§ 404.1529(c), 416.929(c) on an individualized basis. (Tr. 20.) Considering each of the factors and Campbell's testimony, he noted a number of inconsistencies in Campbell's testimony that were not verified by the medical evidence; notations in the record indicating that she had a history of over-utilizing medication and had engaged in a pattern of obtaining overlapping prescriptions from multiple health care providers; documentation which indicates that motivation of financial gain precipitated many complaints regarding back pain after she allegedly fell at a Wal-Mart store; and a notation from a physician that her subjective complaints exceeded the objective clinical findings. (Tr. 21.) The ALJ clearly indicated the weight he gave to Campbell's testimony – he did not find it fully credible– and the reasons for the weight. (Tr. 20-21.) His reasons are well-founded and supported by substantial evidence. (*See* Tr. 162, 181-82, 191-192, 194, 243.)

Campbell also faults the ALJ for his determination that her loss of concentration was caused by a "preoccupation with pain." She contends the ALJ "ignored possible psychological causes of [her] pain and used symptoms of that psychological disorder to disparage [her] credibility." She argues that the ALJ should have ordered that she undergo a mental status examination and should have consulted with a medical expert to aid in the evaluation of the examination. Assuming that such an examination would show that she suffered from symptoms that imposed limitations beyond those found by the ALJ, she argues that the ALJ should have incorporated the limitations into questioning posed to a vocational expert.

8

For the ALJ to attribute Campbell's loss of concentration to a preoccupation with pain was not impermissible. There is no evidence in the record that Campbell suffered from a medically determinable mental impairment that would have caused loss of concentration. Campbell's pain specialist, Ralph G. Menard, M.D., noted that Campbell had a history of low pain tolerance and a history of psychogenic pain. (Tr. 182.) Dr. Menard's notation indicates that Campbell's complaints of pain could be attributed in part to emotional or psychological factors rather than solely upon physiological causes. *See* STEDMAN'S MEDICAL DICTIONARY 1476 (27th ed. 2000). However, the fact that Campbell had a history of psychogenic pain does not compel a conclusion that she suffered from a severe mental impairment and nothing in Dr. Menard's records or the records of any other physician[1] indicate that Campbell suffered from or was treated for such. In fact, examination notes from Lakhu J. Rohra, M.D., a consulting physician, indicate the contrary. According to Dr. Rohra's report, Campbell did not complain of symptoms that could be attributed to a mental impairment, and he determined that her mental status was normal and that there was no clinical evidence of a mental impairment. (Tr. 195-99.)

### IV. The ALJ's development of the facts and evidence

Campbell contends the evidence demonstrates that she suffers from a severe mental or psychiatric impairment. She cites evidence that she suffers from fibromyalgia and chronic fatigue; evidence chronicling her subjective reports to physicians of memory loss, difficulty

---

[1] Although Dr. Paxton noted in 2001 that Campbell was tearful and anxious, he attributed her emotional state to situational stress caused by her sons. (Tr. 160-61.)

sleeping, and overwhelming fatigue; and Dr. Menard's statement that she had a depressed effect and that he believed she had a low pain tolerance and psychogenic pain in the past. (Tr. 161, 165, 182, 184, 229.) Campbell also cites to a notation by Dr. Rohra indicating that she experienced short and long-term memory loss that "could need further evaluation." (Tr. 199.) She argues that if the ALJ believed that her preoccupation with pain was severe enough that it limited her to unskilled work, he should have found that she had a severe impairment and should have fully developed the evidence in regard to the impairment. She contends that if the ALJ had done so he might have found that the impairment met the criteria of Listing 12.07, the listing for somotoform disorders; he would have been precluded from relying on Medical-Vocational Guidelines and would have consulted a vocational expert; and he would have been required to assess her mental residual functional capacity.

Campbell's arguments must be rejected. As discussed above, there is no evidence in the record that Campbell suffered from or was treated for a severe mental impairment. In the absence of evidence sufficient to raise a suspicion that such an impairment was present, the ALJ was not required to obtain a consultative evaluation. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). Likewise, the evidence does not demonstrate that Campbell met each of the criteria of Listing 12.07. *See* Listing 12.07, 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.07. In addition, the fact that the ALJ determined that Campbell was limited to work that involved only unskilled tasks demonstrates that he considered her mental limitations and accommodated them in his residual functional capacity finding.

Finally, Campbell points out that nineteen seconds of the hearing is omitted from the

transcript because it was inaudible and that the omission occurs at the point after the ALJ asked her about problems with her memory. (*See* Tr. 38.) She contends that the omission of the testimony prejudiced her in her request for review before the Appeals Council and in this lawsuit because the testimony consisted of the ALJ's discussion of the impact of her alleged psychiatric problems and the ALJ's rationale for dismissing her allegations. She claims that there is therefore no evidence in the record to indicate the importance or lack of importance the ALJ placed on her psychiatric problems.

Campbell's contentions lack merit. The portion of the transcript at issue concerns the ALJ's questioning Campbell regarding her allegations of memory problems. The ALJ asked Campbell whether she had mental problems related to poor memory, and Campbell testified that she did have problems with her memory and attributed those problems to seizures she claimed to experience. She testified that the "more often [she] had seizures, the more often that [her] memory was gone." (Tr. 38.) According to a notation in the transcript, after Campbell's testimony, the testimony or tape of the testimony was inaudible for nineteen seconds. However, the testimony following this period takes up with the ALJ questioning Campbell regarding the seizures she claimed caused memory loss. (*Id*.) After the ALJ concluded questioning on this subject, Campbell's representative asked her about her seizures and Campbell testified that she suffered her last seizure in January 2005. (Tr. 39.)

The substance of the inaudible portion of the hearing is, therefore, clear to subsequent reviewers: it related to Campbell's allegations of memory loss and her allegation that her memory loss was caused by seizures. Further, the fact that part of the questions and answers

11

regarding this subject were not recorded does not deprive subsequent reviewers of insight into the importance the ALJ placed on Campbell's allegations. The ALJ's opinion in this regard is clearly indicated in his decision; the ALJ did not find Campbell's testimony credible. (Tr. 20.) He noted that there was no evidence of neurological testing for seizure activity and that upon examination for complaints of seizures, a physician found that she did not suffer from such. The ALJ was correct. The only examination in the record related to contemporaneous complaints of seizure activity is dated January 29, 2005. (Tr. 243-45.) Although Campbell testified that she experienced a seizure in January 2005, the evidence from the medical record shows that the examining physician determined that she suffered from non-seizure muscle spasms. (Tr. 244.) The physician specifically noted that Campbell exhibited some jerking leg motion intermittently but that the motion seemed to go away once her attention was diverted and concluded that the motion "certainly [did] not appear to be seizure activity." (*Id.*)

In Social Security appeals judicial review is limited to (1) whether the Commissioner's final decision is supported by substantial evidence, and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *Newton*, 209 F. 3d at 452 (citations omitted). Under this standard the court is not permitted to reweigh the evidence or substitute its own judgment for the Commissioner's. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). Rather, the court must scrutinize the entire administrative record to determine whether substantial evidence supports the Commissioner's decision. *Neal v. Bowen*, 829 F.2d 528 (5th Cir. 1987). In this case, the Commissioner's determination that Campbell is not disabled is supported by substantial evidence and, further, was reached through proper legal standards; thus, her decision is conclusive and must be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).

**V.     Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Campbell's Complaint with prejudice.

**VI.    Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall

bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   May 23, 2006.

NANCY M. KOENIG
United States Magistrate Judge